## Case No. 823.

### The BALTIC.

[2 Ben. 452.] [1]

District Court, S. D. New York. June, 1868.

COLLISION AT PIER—INEVITABLE ACCIDENT—BURDEN OF PROOF—APPORTIONMENT.

1. Where a vessel in motion comes in collision with a vessel at anchor, the burden of

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

proof is on the former, to show that the latter was to blame, or that the collision was inevitable.

[Cited in The James M. Thompson, 12 Fed. 194.]

2. Inevitable accident, as respects a colliding vessel, means that such vessel has endeavored, by every means in her power, with due care and caution, and a proper display of nautical skill, to prevent the collision.

[Cited in The John Tucker, Case No. 7,431; The Delaware, 12 Fed. 573; The Mary Powell, 36 Fed. 599.]

3. Where a vessel was lying at the end of a pier which formed one side of a ferry slip, with her stern projecting six or eight feet into the slip, and a ferry-boat coming into the slip was carried by the tide against such vessel: *Held*, that the collision was not the result of an inevitable accident. as the ferry-boat might have gone further away from the pier; that, as the ferry-boat chose to attempt to enter the slip, with the other vessel in the position in which she was, she must take the consequences of the contingency to which she exposed herself.

4. That the other vessel was also in fault, in lying with her stern projecting across the entrance to the ferry slip.

[Cited in The Canima, 17 Fed. 272; The Margaret J. Sanford, 30 Fed. 716. Distinguished in Shields v. Mayor, etc., 18 Fed. 749.]

5. That the damages must be apportioned.

[Cited in The Mary Powell, 36 Fed. 600.]

In admiralty. This was a libel for a collision, which occurred on the 2d of October, 1865, about seven o'clock, A. M., between the steam tug Pope Catlin and the steam ferry-boat Baltic. [Interlocutory decree for libellant. The libellant's exceptions to the commissioner's report were afterward overruled in The Baltic, Case No. 824.]

The Baltic was a ferry-boat plying regularly across the East river, at the city of New York, from a slip at the foot of Hamilton avenue, in the city of Brooklyn, to a slip at the foot of Whitehall street, in the city of New York. The collision occurred on a trip of the ferry-boat from Brooklyn to New York. The Pope Catlin was lying with her bow to the westward, motionless, fastened outside of a small schooner, which was lying with her bow to the westward, fastened at the south end of pier No. 1, East river, which was the next pier westward of the ferry slip on the New York side. The Pope Catlin had just towed the schooner to that place from Brooklyn. The ferry slip had in it two berths for ferry-boats to lie side by side, with a structure of fenders between the two berths, such structure being much shorter than the jaws of the whole slip to the eastward and westward. The tide, at the time, was running strongly ebb, or to the westward, along the piers and the mouth of the slip. Out in the river, it was high water, or perhaps a little flood. The proper navigation of the ferry-boat, with such a tide, was to trend to the eastward, and sag to the westward with the ebb tide, while checking her headway, so as to enter that one of the two berths which was the more westerly, and which was the one for which she was des-

tined. In going in, the port side of the ferry-boat struck the port side of the Pope Catlin, at a point about ten or eleven feet forward of the stern-post of the Pope Catlin, and caused considerable damage to her, by tearing up her deck, and otherwise. The principal part of the damage was shown to have been done by the port wheel of the ferry-boat (she being a side-wheel steamer), in its reverse motion, coming in contact with the tug, while the engine of the ferry-boat was working backward. The defence set up by the ferry-boat in her answer was, that the stern of the Pope Catlin extended some twelve feet beyond the easterly end of the pier at which she was lying, and the same distance across the entrance to the ferry slip, and in the direct line and track of the ferry; that the ferry-boat entered her slip slowly and carefully, with her engine reversed, but was carried by the tide against the tug, and was unable to prevent the collision; and that the collision was solely due to the negligence of the tug, in thus lying across the entrance to the slip.

W. J. Haskett, for libellants.
B. D. Silliman, for claimants.

BLATCHFORD, District Judge. Where a vessel in motion comes into collision with a vessel which is motionless, the burden of proof lies on the vessel so coming into collision, to show that the collision was inevitable, or that the motionless vessel was to blame. The Percival Forster, Lown. Col. 58. In the present case it is claimed, on the part of the ferry-boat, that the force which swept her against the tug was a vis major, and that, therefore, the collision was, so far as the ferry-boat was concerned, the result of inevitable accident. The ferry-boat must be held liable for the damages caused by her, while in motion, to the motionless tug, unless she shows affirmatively that her being carried against the tug was the result of inevitable accident, or of a vis major, which human care and precaution, and a proper display of nautical skill, could not have prevented. The Louisiana, 3 Wall. [70 U. S.] 164, 173; The Granite State, Id. 310, 313, 314. Inevitable accident, as respects a colliding vessel, means that such vessel has endeavored, by every means in her power, with due care and caution, and a proper display of nautical skill, to prevent the collision. The Lochlibo, 3 W. Rob. Adm. 310, 318. Within these rules, it is fully established, on the evidence in this case, that, so far as the ferry-boat is concerned, the collision was not the result of inevitable accident, or of a vis major. The evidence shows, and indeed it was admitted by the pilot of the ferry-boat, in his testimony, that, as she approached her slip, another ferry-boat was about the length of the Baltic ahead of the Baltic, bound for the easternmost berth in the slip; that the Baltic did not stop for such other ferry-boat, and that, if the Baltic had been alone, and such other ferry-boat had not been thus ahead of her, she would have been able to go nearer to the pier at the easterly side of the slip. The effect of this would have been, that the farther she got to the eastward, the farther would she have kept to the eastward, and away from the tug, when sagged to the westward by the ebb tide. I am satisfied, from the evidence, that if the ferry-boat had exercised due care, and had kept as far to the eastward as she ought, and as she could but for her crowding too closely upon the ferry-boat ahead of her, she would not have struck the tug. Even if the tug projected with her stern across the entrance to the slip, the ferry-boat, having chosen to attempt to enter her slip with the tug in that position, and under circumstances which made it difficult to escape a collision, must, a collision having taken place, bear the consequences of the contingency to which she exposed herself. The Hope, 2 W. Rob. Adm. 8, 10. If the tug had been wrongfully lying wholly across the entrance to the slip, that would not have exempted the ferry-boat from responsibility for colliding with her in attempting to enter the slip. There was, therefore, fault on the part of the ferry-boat, leading to the collision.

But there was also fault on the part of the tug. The weight of the evidence is, that she was lying with her stern projecting partly across the entrance to the ferry slip, and where she had no right to lie. The character of the blow she received, the place where she was struck, and, indeed, the fact that there was any collision at all, all go to show that she must have been lying with her stern projecting to the eastward of the east end of Pier No. 1.

There must be a decree apportioning equally between the two vessels the damages sustained by the tug by the collision, with a reference to a commissioner to ascertain and report such damages.