## Case No. 2,908.

### The CLOVER.

[1 Lowell, 342.][1]

District Court, D. Massachusetts. July, 1869.

COLLISION — VIOLATION OF STATE STATUTE REGULATING NAVIGATION—DIVISION OF DAMAGES.

1. The statute of Massachusetts of 1847, c. 234, § 2, requiring vessels in Boston harbor to rig in their jib-booms in certain cases, is valid, and binds all persons navigating that harbor.

2. A vessel whose jib-boom is standing contrary to the law must be *held* liable for a collision which happens in part or in whole by reason of the neglect.

3. Where a tug in such a case knowing the position of the first vessel, collided with her, when by the exercise of ordinary skill and care she might have avoided her, the tug must bear one-half of the damage.

[Cited in The Belknap, Case No. 1,244.]

The tug-boat Clover was engaged to tow the bark Sarnia from Clark's wharf in East Boston to another part of the same harbor. The bark was not fully rigged nor manned, and the whole movement was conducted by the master of the tug-boat, and no question was made that if either the tug or the bark was liable for the consequences of the collision which ensued, it was the former. The Sarnia was lying on the south side of the wharf with her bows up the dock, which was about one hundred and sixty feet wide. Across the end of the next wharf lay the bark Lord Palmerston, discharging into lighters, and with the extreme end of her jib-boom extending about seventy feet into the dock between the two wharves, thus leaving about ninety feet width of dock free for moving the Sarnia. The tug made fast to the port quarter of the Sarnia, and her master ordered the bow line of the Sarnia to be cast off; he then towed her stern a few feet beyond the edge of the wharf and cast off her stern line, and then went on at full speed. Finding that the Sarnia was sagging down

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

with the .tide and wind more than he had expected, and fearing that a collision with the Lord Palmerston was inevitable, he let go his tow-line to ease the shock, and the Sarnia drifted into the other bark and carried away a part of her jib-boom. He testified that the collision would not have happened if he had kept on. A statute of Massachusetts enacts that the master, &c., of every vessel shall, as soon as practicable, after having hauled to the end of any wharf that extends to the channel in said harbor, cause her lower yards to be cockbilled and her jib-boom to be rigged in, so that said jib-boom may not annoy any other vessel going in or out of the adjoining docks, &c., under a penalty not exceeding ten dollars. St. 1847, c. 234, § 2.

R. H. Dana, Jr., and L. S. Dabney, for libellants.

1. The statute does not apply to us. The claimants have not shown that this wharf extends to the channel, nor that our jib-boom did "annoy" vessels going in or out of the dock.

2. Even if we violated the statute we can recover. The cases of Arundel v. McCulloch, 10 Mass. 70, and Garcy v. Ellis, 1 Cush. 306, were decided at common law, and besides turned on the fact that the wharf and bridge were obstacles to navigation. Here there was ample room to pass, and the law of admiralty is that a vessel which is out of her proper place must not be run down, but must be avoided if possible. The Bay State [Case No. 1,149]; The Batavier, 4 Notes Cas. 356; The Duna, 5 Ir. Jur. 384; Philadelphia, &c., R. Co. v. Philadelphia, &c., Towboat Co., 23 How. [64 U. S.] 218; The Marcia Tribou [Case No. 9,062]; Butterfield v. Boyd [Id. 2,250]; The Telegraph, 8 Moore, P. C. 167. And even at common law the modern doctrine is that an individual cannot abate a public nuisance unless such action is necessary for his reasonable use of the public way. Dimes v. Petley, 15 Q. B. 276.

G. O. Shattuck, for claimants.

1. This wharf extends to the channel line of Boston harbor, as shown by the statutes establishing that line. No other evidence is necessary.

2. State statutes which establish harbor regulations are constitutional and binding on all vessels resorting to the harbor. The New York v. Rae, 18 How. [59 U. S.] 225, per Nelson, J.

3. The violation of the statute is a fault for which the libellants are responsible, and it was one which contributed to the collision. Waring v. Clark, 5 How. [46 U. S.] 465, per Wayne, J.; The John Fraser, 21 How. [62 U. S.] 184; Chamberlain v. Ward, 21 How. [62 U. S.] 565; The Scioto [Case No. 12,508]; Amoskeag Manuf'g Co. v. The John Adams [Id. 338].

4. We say the jib-boom was a nuisance,

and if, in the exercise of ordinary care and skill, we accidentally and not willfully ran against and injured it, the owner has no remedy. Brown v. Perkins, 12 Gray, 89; Arundel v. McCulloch, 10 Mass. 70; Mayor of Colchester v. Brooke, 7 Q. B. 339.

LOWELL, District Judge. Although the damage is small which is sought to be recovered in this proceeding, the parties have thought the points of law sufficiently important to warrant a careful and learned discussion. They are not altogether new to me, and I have given them renewed attention in the light of the arguments. The cases cited appear to establish the proposition that the states may lawfully make regulations concerning the harbors within their limits, and not repugnant to any act of congress, which will be binding on all persons resorting to them for trade. The libellants having failed to comply with such a regulation are in the wrong, if their delinquency caused or aided in causing the collision. The words "so that the said jib-boom shall not annoy" other vessels, do not qualify the express command to rig in the jib-boom, but only explain its purpose, or at most limit the law to those cases in which the jib-boom might possibly or probably interfere with navigation. The collision in this case, which was solely with the jib-boom, sufficiently shows that annoyance was to be apprehended, and that the fault of the libellants contributed to the result.

But the fault of the libellants does not excuse any want of due care and skill on the part of the tug. The doctrine of nuisance has little application here, because, in this case, the true mode of abating the nuisance, if it were one, would be to move the ship, which the evidence clearly proves could have been done in a few minutes and with great ease, by simply letting her drop down with the tide. The master of the tug testified that on former occasions a request for such a removal had sometimes been refused, but it is not fit that the rights of the libellants should be forfeited by the former misconduct of strangers. The tug, therefore, must share the loss, if the want of care or skill of her master contributed to the disaster. It was daylight, the state of the wind and tide, and the width of the dock were all patent, and no reason is given for the collision but the miscalculation of the master. Though he is a man of undoubted skill and prudence, yet it is plain that he did not, in this particular case, take all necessary and proper measures for safety. The theory of the defence is that the only mistake was in not keeping on at full speed; but this mistake would have been avoided by having a competent lookout on board the Sarnia to report whether she was dangerously near the Lord Palmerston. Instead of this the master trusted to his own more distant observation, and ran into unnecessary danger. Two cases

in Judge Sprague's Reports closely resemble this. See O'Neal v. Sears [Case No. 10,530], and The Marcia Tribou [supra]. The ground for holding the libellants to bear a part of the loss is that by their illegal conduct they diminished the width of the dock; and the claimants are liable because, taking the dock as it was, they might by competent skill have taken the vessel out without damage to the Lord Palmerston, though not as easily as if the law had been complied with by the latter vessel. Decree accordingly.