## THE MILLIGAN.*

## THE BRAZIL.*

*District Court, E. D. Pennsylvania.* February 17, 1882.)

ADMIRALTY—COLLISION—ANCHORING IN CHANNEL—MUTUAL FAULT.

A sloop anchored near the range of range lights, and in a narrow channel, leaving only about 80 feet for passing vessels. A bark, in tow of a tug, while endeavoring to pass, collided with the sloop. *Held*, that the sloop was negligent in anchoring in the channel, but that, as it appeared that the bark could have passed in safety by the exercise of proper care, the damages should be equally divided.

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

Two libels by the owner of the sloop Nanticoke—one against the bark Milligan and the other against the tug Brazil—to recover damages for injury by collision. The testimony disclosed the following facts:

On March 8, 1881, the sloop was bound up the Delaware river, and when near Chester, the tide being ebb and the wind having died out, she came to anchor in a narrow channel and close to the range of the range lights. While she was in this position the tug Brazil, having in tow by a hawser the bark Milligan, came down the river. The tug passed safely to the eastward, but the bark collided with the sloop, causing the damage for which these libels were filed. The witnesses for libellant testified that the sloop was compelled to anchor at this point on account of the failure of the wind; that she was not in the centre of the channel, but a little to the westward; that the channel was 300 or 400 yards wide; and that the collision was caused by the bad steering of the pilot in charge of the bark in not shaping his course until within a short distance of the sloop. The testimony of respondents' witnesses was to the effect that the channel was not over 150 feet wide for large vessels; that the sloop was directly in the centre of it; that she had been previously warned, from a passing vessel, to change her position; that such change could readily have been made by drifting with the tide 500 feet further down; that from the time the sloop first came in sight the collision was inevitable, owing to the size of the channel and the position of the sloop.

The court propounded certain interrogatories to nautical assessors, which, with the answers thereto, were as follows:

*First.* Was the anchorage selected by the sloop Nanticoke—very near the centre of the channel at "Schooner Ledge Shoals"—a safe and proper one?

Could she have safely floated back towards the side of the channel below, when the tide changed?

*Answer.* The anchorage selected by the sloop, as stated in this interrogatory, was neither a safe nor proper one to make, as her position in such a narrow channel would make it difficult for vessels to pass with safety, and extremely so for those of heavy draught, such as our European steamers and vessels of that class.

When the tide commenced to run she could have tripped her anchor and dropped below or into shallow water, where she would have been safe and out of the way of passing vessels.

*Second.* Supposing the sloop to have beeen a little to one side of the centre of the channel, westward, leaving 80 feet clear, eastward, should the tug and bark have passed safely?

If you answer they should, please read the testimony of the pilot and master in charge, and say wherein they failed in care and duty. I enclose this testimony.

*Answer.* A passage of 80 feet, to the eastward of the sloop, allowed ample room for the tug and bark to pass in safety, if the proper care and judgment were used that is necessary in navigating such channels.

The testimony of the pilot and master in charge of the bark shows a want of proper care and judgment in not deciding and shaping her course to the eastward before getting to within 75 or 100 feet of the sloop, although she was seen when a half a mile or more away.

*J. Warren Coulston*, for the Nanticoke.

*C. Gibbons, Jr.*, for the Milligan.

*Henry Flanders*, for the Brazil.

BUTLER, D. J. These cases arise out of one transaction,—involve the same facts,—and will be disposed of together. That each party was in fault, I have no doubt—the sloop for lying at anchor where she did, the bark and tug for failing to keep off. While the sloop was not lying upon the range of lights, she was dangerously near it,— subjecting passing vessels to the exercise of unusual care. The position was not forced upon her; she might have anchored lower down, (before reaching it, or by floating back when the tide turned.) She would thus have been out of the way, and out of danger. Her anchorage so near the centre of a narrow channel was inexcusable. The suggestion that she could not safely float back,—that the absence of wind rendered her helpless,—is unsupported by the facts, and entitled to no weight. Her fault in this respect, however, does not excuse the tug and bark, for running into her. They had ample room, with the observance of proper caution, to pass in safety,—probably on either side, certainly to the eastward. The exact width of the channel cannot be ascertained from the testimony; none of the witnesses know it. Those called by the sloop suppose it to be 300 or 400 feet, while those called by the other side suppose it to be about 150 feet. The statements of these witnesses show that they are simply guessing. While the actual width is doubtless much greater, we may safely assume it to be 150 feet. As before stated, the sloop was slightly off the centre, westward, leaving at least 80 feet clear. That this space was amply sufficient, with the exercise of proper care, to admit of safe passage, would seem to be plain; and is so stated by the assessors, (whose answers are attached.) The collision was, therefore, the result of carelessness on both sides. That the sloop was at anchor may possibly not have been discoverable at any great distance. It was known, however, that she was virtually becalmed and motionless, from the time she came in view. That there was not wind sufficient to propel her the witnesses all agree. The answers of the assessors render it unnecessary to say more.

Half damages and half costs will be allowed by the libellant, in each case.