THE MARY POWELL

THE PHILIP SINNOTT.

MOORE *et al. v.* THE MARY POWELL.

MARY POWELL STEAM-BOAT CO. *v.* THE PHILIP SINNOTT *et al.*

*(Circuit Court, S. D. New York.* October 15, 1888.)

1. COLLISION—BETWEEN STEAMER AND VESSEL AT PIER—INEVITABLE ACCIDENT.
   On the south side of a pier, projecting from the shore-line 512 feet into North river, lay the barge S., her bow towards the shore, and her stern projecting from 10 to 20 feet beyond the end of the pier, when she was struck by an up-steamer, which had swung out from a 400-foot pier, 600 feet below. *Held,* that though wind and tide were setting in towards the upper pier, and the pilot, on discovering that his swing-off was not sufficient to avoid collision, used due diligence to stop the steamer, it was not an inevitable accident; the pilot being familiar with the set of the tides there, and there being abundant space for passage behind the stern of the barge.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   The mere fact that a barge lies with her stern projecting from 10 to 20 feet beyond the end of a 512-foot pier, at which she is berthed in North river, does not constitute contributory negligence, in case of a collision by a steamer in attempting to pass up the river, after swinging off from a 400-foot pier 600 feet below; there being no other obstruction to free passage.

In Admiralty. Cross-libels for damages. On appeal from district court, 31 Fed. Rep. 622.

Cross-libels for damages by collision by Harrison B. Moore and others, owners of the barge Philip Sinnott, and by the Mary Powell Steam-Boat Company, owners of the steam-boat Mary Powell. From decrees against the Mary Powell her owners appeal.

*James Parker*, for the Mary Powell *et al.*

*John A. Deady*, for Moore *et al.*

LACOMBE, J. On July 7, 1886, the barge Philip Sinnott lay along the south side of pier foot of Twenty-Fourth street, North river, her bow towards shore, and her stern projecting into the river beyond the end of the pier. The extent of this projection is in dispute; the appellants claiming that it was about 16 feet, and the appellees insisting that it did not exceed 9 or 10 feet. In either case it was less than the width of another barge or lighter which at the same time lay across the end of the pier, with her bows pointing down the river. The width of this other barge—the Anderson—was 23 feet, and it seems probable, from the evidence, that the Sinnott's stern did not project more than half that distance beyond the end of the pier. This Twenty-Fourth street pier projects 512 feet from the line of the bulk-head or shore-line. Two hundred feet or more below it lies the northerly rack of the Pavonia ferry. Still further down is the pier, foot of Twenty-Second street, distant nearly 600 feet from the Twenty-Fourth street pier. It projects from the bulk-head or shore-line only 400 feet. About 3:30 P. M. the steam-boat Mary

Powell, after making her usual daily landing at the lower pier, swung her head off preparatory to starting on her course up river. The wind was blowing a good breeze from the W. S. W., and the tide was flood. Her pilot saw the two barges lying as above described. Almost immediately after starting he discovered that his swing-off was not sufficient to prevent the Powell from being so set in by wind and tide towards the Twenty-Fourth street pier that collision was imminent. Thereupon he rang bells to stop the engines, and back them strong, which bells were obeyed; but, before the Powell's headway could be entirely stopped, her stem came into contact with the starboard side of the Sinnott, causing damage to both vessels. Decrees upon the cross-libels were given in the district court against the Mary Powell, and her owners have appealed.

That the Powell was in fault seems entirely clear. She was in motion, the barge fast to the pier. Her pilot had been engaged for four years in piloting her at that dock, and was familiar with the set of the tides there. He saw the lighters before he started, and undertook to swing out far enough to just clear them. As he himself expresses it, "If I went clear of it, I was well satisfied." He had, for all that appears in the case, the whole of the North river to swing in; and when, after the collision, he allowed himself more room, he passed, as he admits, without any trouble, clearing the lighter at the end of the dock with a margin of 16 feet. There is nothing in this to make out a case of inevitable accident, under the authorities. *Steam-Ship Co.* v. *Steam-Ship Co.*, 24 How. 307; *The Morning Light*, 2 Wall. 550; *The Baltic*, 2 Ben. 452. It was, as the learned district judge held, an error of judgment by the Powell's officers, occurring naturally enough, and not necessarily impeaching their general skill and judgment, but none the less it was an avoidable mistake. They undertook to shave too close, when they had abundant room to spare, and the boat must respond for their error. *The John Brotherick*, 8 Jur. 276.

It is further contended on behalf of the Mary Powell that the Sinnott was herself in fault, because her position at the pier, with her stern projecting, was an improper one, and rendered her an additional obstruction to navigation. The mere fact that a vessel lying at a pier is so berthed as to project beyond the corner of the pier is not by this court deemed sufficient cause for condemning her to contribute for the damages resulting from a collision occurring while so berthed. *The Canima*, 32 Fed. Rep. 302. The situation of the projecting vessel must be such as improperly to obstruct the colliding vessel's access to or egress from her pier, or in some way to complicate her proper movements. In the case at bar such interference with the Powell is not made out. It is true that she had to swing out from her own pier in order to take her course; but the designers of the pier plan of this city, when they thrust the upper pier 112 feet further out than the lower one, made it necessary for every boat bound up the river from the lower pier to make such swing. It is also true that she had to swing further out than would be necessary merely to clear the pier itself; but the pier was built for use, and its width was thus liable to be increased by the beam of vessels lying at each

side, and its length by the beam of vessels lying at its end. No local regulation restricting the use of the end of the pier has been called to the attention of the court. The provision in the ordinances (Revision 1866, p. 299) forbidding vessels to lie "at the end of or within any pier with the jib-boom rigged out" was omitted in the Revision of 1881; being perhaps considered to have been superseded by regulations of the dock department, to which jurisdiction over such matters had been theretofore confided. Even if still in force, it does not forbid vessels from lying at the end of a pier when their jib-booms are not rigged out. In the absence of local regulation, the ordinary use of a pier contemplates the occupation from time to time of sufficient water area off its end and at its sides to allow for berthing vessels. With the whole width of the river to swing in, and a starting point more than 500 feet down stream, it was quite easy and practicable for the steam-boat to clear the upper pier, and a space beyond it, sufficient to subserve its ordinary use as a pier. Beyond that space the Sinnott did not protrude, nor did she violate the rule as to obstructing ferry slips. *The Baltic,* 2 Ben. 452. She was not an additional obstruction at that point, for she did not occupy any part of the river not already appropriated to obstruction by the erection of the pier, and the use which its presence invited. She lay wholly within the area which the Powell was bound to clear whenever called upon. The decrees of the district court should be affirmed, with costs.