AMERICAN-HAWAIIAN S. S. CO. v. KING COAL CO. et al.

(Circuit Court of Appeals, Ninth Circuit. February 23, 1926.)

No. 4688.

Collision ⟨═⟩71(3)—Violation of harbor rules as to docking held not proximate cause of injury, where docked vessel was out of channel, and not an obstruction to navigation.

Violation by the P. of harbor commissioner's rule, by projecting beyond end of pier to which it was docked, held not proximate cause of collision with it of the H., where the P. was docked out of the channel, and not an obstruction to navigation, and efficient cause of collision was negligence of H. in running at full speed, wild, and wholly out of control.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Libel by the King Coal Company against the United States and others, with the American-Hawaiian Steamship Company as third party respondent, with cross-libels by the United States and the Steamship Company against each other. Decree for libelant (7 F.[2d] 153), and the third party respondent appeals. Decree modified.

King Coal Company, owner of the barge Ruth, filed a libel in personam against United States of America, United States Shipping Board, and United States Shipping Board Emergency Fleet Corporation, owners of the steamer Hagan, to recover damages

for the destruction of the Ruth in a collision with the Hagan. The United States filed a petition under the Fifty-Sixth Admiralty rule, praying that American-Hawaiian Steamship Company, owner of the Pennsylvanian, be made a party respondent, and that the United States have judgment over against this latter corporation for any damages adjudged against it in favor of libelant. This petition was granted. A cross-libel was filed by the United States against American-Hawaiian Steamship Company, and another cross-libel was filed by the latter corporation against the United States. These cross-libels claimed recovery of the damages suffered, respectively, by the Hagan and the Pennsylvanian. The damages suffered by these latter vessels were comparatively small; the large loss being due to the sinking of the Ruth. The cause was tried on the merits, and the Hagan and the Pennsylvanian were held jointly responsible. American-Hawaiian Steamship Company, owner of the Pennsylvanian, brings the case here on appeal.

Louis T. Hengstler and Frederick W. Dorr, both of San Francisco, Cal., for appellant.

Ira S. Lillick, of San Francisco, Cal. (Theodore M. Levy, of San Francisco, Cal., of counsel), for appellee King Coal Co.

Geo. J. Hatfield, U. S. Atty., and Frank Maytham, Sp. Asst. Atty. Gen., both of San Francisco, Cal. (J. J. Dwyer, of San Francisco, Cal., of counsel), for appellees United States and others.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

McCAMANT, Circuit Judge (after stating the facts as above). The accident out of which this litigation has arisen took place in Oakland Estuary, which opens into the east side of San Francisco Bay. On the morning of May 15, 1924, the tanker Hagan was docked at the Hanlon Shipyards, in the estuary east of the Webster Street bridge. She started down the estuary in charge of a pilot and under her own steam. When she reached the drawbridge at Webster street, the pilot noticed that something was wrong with the steering gear. On investigation it was discovered that the rudder was amidships and the steering gear was not functioning. The vessel was on the north side of the channel, and had a slight swing to the left; her speed was about 4 or 5 miles an hour. For the purpose of increasing the swing of the vessel, the pilot ordered her full speed ahead. The channel of the estuary bent to the left

at this point. The swing was insufficient to enable the Hagan to clear the Pennsylvanian, which was moored to the municipal pier on the north side of the estuary. The bluff of the starboard bow of the Hagan struck the starboard quarter of the Pennsylvanian 50 or 60 feet from her stern. The after part of the Hagan then struck the Pennsylvanian in the same place. This threw the Hagan over onto the barge Ruth, which was cut through and sunk.

No question is made on this appeal as to the fault of the Hagan, and it is therefore unnecessary to state with more particularity the trouble with the steering gear and the respects in which the Hagan is charged with negligence. The question presented by this record is whether the court properly divided the damages between the Hagan and the Pennsylvanian.

The stern of the Pennsylvanian extended 25 or 30 feet beyond the end of the municipal pier. Item 270 of the Port Regulations of Oakland is as follows: "Vessels, while lying across the end of any pier or wharf, or whose sterns extend beyond the end of any pier or wharf, will be responsible for any or all damage to themselves or to any other vessel while occupying that position." Item 200 of the same regulations provides that vessels must not run within 100 feet from and parallel to the pierhead line.

Giving the port regulations the construction contended for by appellee, it follows that the Pennsylvanian was improperly moored, but she was not lying in a channel or fairway. She was visible from the Hagan at all times after the latter vessel had passed the Webster Street bridge, a distance of 3,100 feet. Capt. Sorenson of the Hagan testifies that his vessel struck the Pennsylvanian a glancing blow, and that 2 feet more of space would have enabled the Hagan to clear the Pennsylvanian.

Appellant contends that item 270 of the Port Regulations, supra, is an attempt by the department of public works to determine the responsibility for certain maritime casualties, that this function belongs to the admiralty courts, and the regulation is therefore void. In The Nettie Sundberg, 100 F. 886, the District Court for the Northern District of California had occasion to pass on the following provision found in the harbor regulations of San Francisco: "Vessels, while lying across the end of any pier or wharf, will be responsible for any and all damage to themselves or to any other vessel while occupying that position." The court said: "The most natural construction of the

rule is that it is an attempt upon the part of the board of state harbor commissioners to prescribe what the rule of damages shall be in case of a collision between vessels when one of them is moored at the end of a wharf, and it is only in the event of such a collision that the rule is to have any operation whatever; and, thus construed, it is invalid for any purpose."

It is not necessary to go so far in this case in order to sustain appellant's contentions. We may concede that item 270 of the Oakland Harbor Regulations is a declaration of local policy, which the courts should respect, and that the Pennsylvanian should not have been berthed with her stern extending beyond the municipal pier. It does not follow that the Pennsylvanian should be charged with half of this damage. The collision took place in daylight. The Pennsylvanian was visible from the Hagan for more than a half mile. The Pennsylvanian was at least 70 feet out of the channel, and was not an obstruction to proper navigation. The efficient cause of the trouble was the Hagan running at full speed in the estuary, wild and wholly out of control.

The principles of law applicable to this case are those announced by this court in The Yucatan, 226 F. 437, 141 C. C. A. 267. This was a libel brought to recover damages sustained by the United States steamship Boston, leased to the state of Oregon. The Boston was moored in the channel of the Willamette river at Portland. The Yucatan, in leaving her berth and endeavoring to pass through the Broadway Bridge, collided with the Boston. This court, speaking through Judge Rudkin, said: "Assuming that the state of Oregon was guilty of negligence in mooring the Boston in the fairway, and in permitting her guns to extend beyond the rail, in violation of the ordinances of the city of Portland, such negligence would not bar a recovery if the collision could have been averted or avoided by the exercise of reasonable diligence on the part of the officers of the Yucatan. A person does not invite the destruction of his property simply by leaving it exposed in a public place, even though his act in so doing may create a public nuisance. * * * The negligence of the state, if negligent at all, would not bar a recovery, unless such negligence caused or contributed to the injury." These conclusions are also supported by The Canima (C. C.) 32 F. 302, The Mary Powell (C. C.) 36 F. 598, and The Daniel McAllister, 258 F. 549, 552, 169 C. C. A. 489.

It follows that the decree should be modi-fied, so as to charge the United States, as owner of the Hagan, with sole responsibility and also with the costs of the suit.