## THE WESTERN QUEEN.
## THE COMMERCIAL PATHFINDER.
## UNITED STATES v. OSAGE S. S. CO., Limited.
### No. 5821.

Circuit Court of Appeals, Fifth Circuit.
Jan. 15, 1931.

H. M. Holden, U. S. Atty., of Houston, Tex. and Howell Ward, Asst. U. S. Atty., of Corpus Christi, Tex., for appellant.

Carl G. Stearns, of Houston, Tex., and Roscoe H. Hupper, of New York City, for appellee.

Before FOSTER and WALKER, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge.

The owner of the steamship Commercial Pathfinder filed its libel against the United States, the owner of the steamship Western Queen, to recover damages caused by the Western Queen colliding with the Commercial Pathfinder while the latter was moored at the end of Galveston Pier 35. The collision occurred at or near 6 p. m. on November 12, 1927. Prior to the collision the Pathfinder had been engaged in loading sulphur from a chute on the end of Pier 35, and, after completing loading into her No. 2 hatch, had shifted toward the east side of the pier for the purpose of loading from the chute into her No. 5 hatch. While that shifting of the Pathfinder was going on—being effected by heaving on lines made fast on Pier 35—the Western Queen, after leaving Pier 10, which is about one mile east of Pier 35, and moving under her own power in the channel until she got to the end of Pier 33, then turned towards the slip between Pier 35 and Pier 33, with the purpose of berthing in that slip next to the east side of Pier 35. The Western Queen was accompanied by a tug, which was on her port bow until she turned to get into the slip, when the tug was shifted to her starboard quarter. The Western Queen then dropped her port anchor, and moved under her own steam into the slip, dragging her port anchor, and the tug attempting to hold her stern against the strong wind and flood tide from the east. The tug failed to hold the Western Queen's stern against the wind and tide, which pushed her against the Pathfinder's stem and port bow.

For the appellant it was contended that no fault was chargeable against the Western Queen, and that the Pathfinder was at fault in obstructing the maneuver of the Western Queen to get to her berth in the slip. The court's memorandum opinion shows that it found that the Western Queen was at fault, that the above-mentioned movement of the Pathfinder stopped before she had gone as far east as the eastern side of Pier 35, and that the Pathfinder was not at fault in obstructing the maneuvering of the Western Queen.

Much of the evidence was testimony given in the presence of the court. Undisputed evidence showed that it was quite usual for vessels to be moored at the end of Pier 35, especially for the purpose of taking on sulphur from the chute there located, that the pilot on the Western Queen saw a vessel there while coming toward the slip from the east, and, before the beginning of the maneuver to get into the slip, that the Pathfinder was not signaled or requested to move farther toward the west before the Western Queen began that maneuver, that the Western Queen was only partly loaded, was light and high out of the water, and that one tug could not hold her against the wind and tide, which did not change between the time the Western Queen left Pier 10 and the occurrence of the collision. There was testimony to the effect that the shifting of the Pathfinder towards the east stopped ten minutes before the collision, that when the movement of the Pathfinder was stopped her stem was about twenty feet west of the east side of Pier 35, that the Western Queen could have been held against the wind and tide, and danger of a collision could have been avoided, by providing two tugs to assist her, that the contemplated maneuver of the Western Queen was to turn towards the slip and move directly into it, without using the corner of Pier 35 as a fulcrum to aid in getting her to her berth, and that danger of a collision with the Pathfinder could have been avoided by the Western Queen turning out in the channel and moving against the wind and tide in approaching and entering the slip, or by the Western Queen, before attempting to enter the slip, waiting for the Pathfinder to shift further to the west after signaling or requesting her to do so. It appears from the record that there was ample evidence supporting the conclusion that, in the circumstances disclosed, the Western Queen was at fault in attempting, in the way disclosed, to get into the slip without taking the precautions of having more than one tug to aid her, or of signaling or requesting the Pathfinder to move farther west.

In behalf of the appellant it was contended that the collision was caused or proximately contributed to by the Pathfinder's violation of the statute making it unlawful "to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft," etc. (33 USCA § 409), and of the Galveston local harbor regulation that "No vessel * * * shall * * * be made fast to the exterior end of any pier, * * * or along any bulkhead in such manner as to obstruct the passage of any vessel to or from adjacent wharf property, or impede the movement of any vessel entering or leaving the slips." As there was a loading chute located on the end of Pier 35, it cannot well be supposed that the just set out regulation was intended to prohibit the mooring of a vessel where she was required to be to take on cargo from that chute. Located as the court, amply supported by evidence, found the Pathfinder was at and prior to the time of the collision, no part of her protruding beyond the east side of Pier 35, she could not have prevented or obstructed the passage into the slip between that pier and Pier 35 of a vessel approaching from the east unless that vessel, after turning in the channel, instead of proceeding straight into the slip, should be so maneuvered that she or part of her would or might get farther west than the east side of Pier 35. A maneuver involving such a result was not justifiable without giving the vessel, located as the Pathfinder was, warning and an opportunity to move from where she was subject to be collided with. Even if the Pathfinder where she was moored properly could be regarded as an obstruction to a possible maneuver of the Western Queen in the latter's attempt to get to her berth, the Pathfinder was entitled to a warning and an opportunity to move before the execution of such a maneuver. The record does not indicate that there was anything to keep the Western Queen from delaying her attempt to get into the slip until she had signaled or requested the Pathfinder to move farther west and had afforded her an opportunity to do so. No such warning or opportunity to move having been given before the Western Queen proceeded in her attempt to enter the slip and get to her berth, the Pathfinder was not chargeable with obstructing the passage of the Western Queen into the slip, or with fault for failing to shift farther west, and the fault of the Western Queen is to be regarded

as the sole efficient cause of the collision. The Jersey Central (C. C. A.) 30 F.(2d) 269; American-Hawaiian S. S. Co. v. King Coal Co. (C. C. A.) 11 F.(2d) 41.

The decree is affirmed.