## THE LADY OF GASPE. THE JOHN L. WADE. THE MARION OLSEN.

(Circuit Court of Appeals, Second Circuit. November 16, 1921.)

### No. 30.

**1. Collision 90—Duty to another vessel obstructing navigation stated.**

A vessel, even while obstructing navigation, does not, for the purposes of civil suit, become an outlaw, but other vessels must exercise care for her safety according to the circumstances; but the duty to exercise such care does not require insuring the safety of the obstructing vessel, and the carelessness or obstinacy of her navigators is a circumstance to be considered in determining such care.

**2. Collision 70—Need not cease navigating until obstructing vessel is removed.**

A lighter, which tied up in a position which obstructs navigation in a slip, cannot insist that all navigation cease until the lighter is removed.

**3. Collision 70—Vessel movable by hand cannot require tug to be furnished.**

A lighter, moored at a slip in such a way as to obstruct navigation by steam vessel, but which could be and customarily was moved by hand, cannot refuse to move out of the way of the approaching vessel, and require a tug to be furnished to take her where she desired to go, even though the easiest direction to move her by hand would be back into the slip, where she might become pocketed.

**4. Collision 71(2)—A gentle contact with lighter obstructing navigation held not a fault.**

Where a lighter was moored at the entrance to a slip, in such a position as practically to obstruct navigation by an incoming steamer, and refused to move unless a tug was furnished to take her where she desired to go, the steamer was not at fault for striking against the lighter so gently as not to injure the hull, in an effort to push her to one side.

**5. Collision 74—Evidence held not to show vessel had anchor projecting.**

Though it would be a fault for a steamship to attempt to enter a slip occupied by other vessels with her anchor projecting from her side, she will not be held at fault in that respect, where there was very little evidence that her anchor was projecting, the point was given no attention in the court below, and fault in the carriage of her anchor was not specifically assigned for error on appeal.

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by the Chiarello Bros. Co., Inc., against the steamship Lady of Gaspe and two tugs, the John L. Wade and the Marion Olsen. From a decree dismissing the libel as against all vessels, libelant appeals. Affirmed.

Libelant sued for damages to a harbor lighter of ordinary size (92x33) belonging to them, and injured because (according to the libel) the anchor of steamship Lady of Gaspe caught the mast stay of the lighter. The accident occurred in Erie Basin; the Gaspe, under her own steam, assisted by two tugs. and with the master of one of the tugs on the bridge and in charge, was very slowly attempting to enter a slip in the Basin, which slip was bounded on the steamer's port side by Pier B. At the end of Pier B there lay numerous vessels, how many does not clearly appear. They had been there for some time. Most of these vessels lay in the usual way, broadside to the pier end, but libelant's lighter had come out of the slip some time before the accident, and made fast to some of the boats at the pier end, lying at right angles to them. The lighter was unloaded, she had moved out of the slip by hand, she is the kind of vessel that is commonly moved by hand, and no sufficient reason appears why she could not by hand have moved out of the way of the approaching Gaspe.

It is admitted that this lighter was an especial obstruction to the Gaspe's navigation; that she was warned that the steamer was coming, in ample time to enable her to get out of the way. It is possibly true (though by no means certain) that the only place that she could have navigated to with ease unassisted was into the slip; and if she went far enough up the slip to be out of the steamer's way, she might get "blocked in." At all events it is certain that the lighter master, though warned of the steamer's coming and asked, if not ordered, to get out of the way by those in charge of Pier B, refused to attempt to move, insisting (in substance) that any one who wanted him to move must send a tug to take him away, and apparently to whatever nearby place he chose to lie at.

The Gaspe very slowly came in contact with the side of this lighter, intending to press her back, for her lines were slack, or had slacked, and (as we find) she was projecting quite out into whatever fairway these crowded waters afforded. There is no evidence that any injury was done to the hull of the lighter by this contact; but some projection from the bluff of the steamer's bow—it is not certain whether an anchor stock or a chute—caught the lighter's mast stay and did the damage complained of.

Libelant, as owner, sued the steamer and both the assisting tugs. The court below dismissed the libel as against all. Libelant appealed.

Macklin, Brown, Purdy & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for appellant.

Bullowa & Bullowa, of New York City (Ralph J. M. Bullowa, of New York City, of counsel), for the Lady Gaspe.

Foley & Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for the steam tugs.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge. The claim made on this appeal is that, admitting the lighter did obstruct the entrance to the pier, admitting that she might justly be called an obstruction to lawful navigation, and admitting that she had received warning and orders to move, yet nevertheless she was (1) not an outlaw; and further (2) was not required to move unless those who wanted her out of the way furnished a tug for her convenience.

[1] We are not aware of any circumstances under which a vessel for purposes of civil suit·becomes an "outlaw"; it is always necessary for other vessels having to do with her to exercise care according to the circumstances. The Westernland (D. C.) 24 Fed. 703. But one even exercising care does not insure the safety of those who are persistently and wantonly exposing themselves to danger. The carelessness or obstinacy of the person ultimately injured often furnishes the background or groundwork which constitutes the circumstances measuring the care demandable from others.

[2] Pushed to its logical conclusion, the position of libelant is this: My lighter was a menace to navigation, therefore the Gaspe could not navigate until that menace was removed. This, under The Etruria (D. C.) 88 Fed. 555, is not the customary law of this harbor. If it were, one vessel might block the entrance to a large slip or choke a narrow channel as long as she liked, or until the harbor authorities were roused to interfere. No hard and fast rule can be laid down; every case will always depend upon its own set of circumstances. In this case it was not impossible, but very difficult, for the Gaspe to get into her slip unless the lighter moved. Therefore it is claimed that a tug should have been furnished to move her.

[3] How a vessel is to move or to navigate depends upon her habitual method of· propulsion. In The Westernland, supra, the schooner which blocked the steamer's exit from a slip could not move without assistance; in this case libelant's lighter could move without any other power than the muscles of her crew. She was in the habit of so moving or navigating, and it was no excuse for remaining where she was that, if the easiest thing were done (i. e., move up the slip) she might get "blocked in." That would have been inconvenient, perhaps even expensive, but it does not justify remaining a wilful menace to navigation.

[4] Inasmuch, therefore, as the lighter was able to comply with a reasonable warning by her habitual method of wharf-side navigation, it was a fault in her to refuse so to do. It was not a fault for the Gaspe to come ·in contact with this obstinate lighter. That, also, is a question of degree; but there is no evidence to show that the contact was not as light and gentle as the circumstances required, there is no evidence of.breaking the lighter's hull.

·[5] If we were satisfied that the Gaspe had an anchor hanging from her cathead, or otherwise unusually projecting from her side, she likewise would be liable under The Sontag (D. C.) 40 Fed. 174, and The Overbrook, 142 Fed. 950, 74 C. C. A. 120. No vessel can lawfully navigate around wharves and piers with such a dangerous appendage. But there is very little evidence on this subject; the result thereof is very doubtful; the point was given no attention in the opinion of the Court below, and fault in the carriage of her anchor is not specifically assigned for error in this Court.

Therefore we disregard it, and direct that the decree appealed from be affirmed, with costs.