NEW YORK & CUBA MAIL S. S. CO. v.
UNITED STATES et al.

FLANNERY, GUINAN & MORAN, Inc., v.
NEW YORK & CUBA MAIL S. S. CO.
et al. (two cases).

(Circuit Court of Appeals, Second Circuit.
May 3, 1926.)

Nos. 314–316.

1. Collision ⊜═71(3)—"Pier end" statute of
New York does not govern right of recovery,
but violation of it is fault, which, if it con-
tributes to collision, results in liability (Great-
er New York Charter [Laws N. Y. 1901, c.
466] § 879).

"Pier end" statute of New York (Greater
New York Charter, § · 879) does not govern
right of recovery of damages in admiralty, but,
being a regulation within power of state, viola-
tion of it is fault, which, if it contributes to col-
lision, results in liability.

2. Collision ⊜═71(3)—Barge's violation of
"pier end" statute held not contributing
cause of collision with ship approaching pier
(Greater New York Charter [Laws N. Y.
1901, c. 466] § 879).

Barge's violation of pier end statute
(Greater New York Charter [Laws N. Y.
1901, c. 466] § 879), by lying at end of pier
outside of two other barges, held not con-
tributing cause of collision with ship approach-
ing pier under orders from stevedore in charge.

3. Collision ⊜═115—Agent in charge of gov-
ernment-owned ship held not entitled to re-
cover damages to its barge, with which ship
collided while approaching pier at direction of
agent's chief stevedore in charge of pier end.

Where government-owned ship, in charge of
agent, which employed navigators, in approach-
ing pier under · orders of stevedore in charge,
an employee of the agent, collided with and
damaged a barge belonging to the agent lying
at the end of the pier, held, agent could not
recover of government for such damages.

Appeals from the District Court of the
United States for the Southern District of
New York.

Libel by the New York & Cuba Mail
Steamship Company, owner of the barge
Support, against the United States and the
barge F. G. & M. No. 20, Flannery, Guinan &
Moran, Inc., impleaded claimant, and libel
by Flannery, Guinan & Moran, Inc., as own-
er of the barge F. G. & M. No. 20, against the
New York & Cuba Mail Steamship Company
and the United States. From final decrees
dismissing these libels, libelants appeal. De-
cree in first libel affirmed, and in the second
modified, to permit recovery by libelant.

The Suwied is a steamer of considerable
size belonging to the United States. At the
time here important she ·was managed by
New York & Cuba Mail Steamship Company

(hereinafter called Steamship Company)
under an "agency agreement" under which
it agreed for a stated compensation "to man-
age, operate, and conduct the business of
such vessels" as might be assigned to it, as
was Suwied.

By this agreement Steamship Company
agreed "to man, equip, victual, and supply
such vessels," and also "to exercise reason-
able care to protect and safeguard the inter-
ests of * * * the United States in all
respects, and to exercise reasonable care to
avoid loss and damage of every nature to
* * * the United States. In judging
the liability of the agent [Steamship Com-
pany] under this paragraph, the acts of
subagents or brokers employed by the agent
shall be deemed the acts of the agent."

Pier 16, Brooklyn, N. Y., is, if not owned,
operated and managed by the Steamship
Company. The men in charge thereof, and
especially the chief stevedore thereon, are
employees of that company. To this pier
Suwied was due to arrive, and the chief
stevedore knew it. It was admittedly his
business to prepare the pier for her arrival,
and preparation included · clearing away
from the berth destined for her, and from
the approaches thereto, dumb barges of all
descriptions.

Suwied was bound to the south side of
the pier, and the tide was making flood. The
natural way for the steamer to get in was to
land on the outer pier corner and be pushed
alongside by tugs. At the end of the pier,
however, were three barges, one fastened to
the pier itself, outside her the Support, be-
longing to Steamship Company, and outside
of both No. 20, belonging to libelant Flan-
nery, etc., Inc.

The steamer arrived off the slip end,
and her master and the pilot in charge rec-
ognized the danger of attempting to enter
with these barges at the pier end. They de-
clare that by megaphone they requested the
chief stevedore, whom they recognized as in
charge on shore, to get the barges away; he
says that he did not hear them, and we are
satisfied that he did not know what they
wanted done. He thought that the barges
afforded no reason for delaying, and we be-
lieve the evidence from Suwied that against
their better judgment her master and pilot
started in, because they interpreted the
stevedore's signals as an order to come on.

Further, we hold it fairly shown that
the Support and No. 20 were not told to get
out of the way, were not warned of their
danger, nor even told to slack their lines
and drift up with the rising flood tide away

from the pier corner, where Suwied shortly rested to their danger.

These barges were in a position forbidden by the "pier end" statute of New York (Greater New York Charter [Laws N. Y. 1901, c. 466] § 879), declaring that vessels such as these, lying "at the exterior end of wharves * * * of the North or East River," do so "at their own risk of injury from vessels entering or leaving any adjacent dock or pier."

The suits at bar, owing to the presence of the United States as a party, present some now immaterial multiplication of pleadings, but in substance they were all tried together as demands by Flannery, etc., Inc., against both United States and Steamship Company to recover for injury to No. 20, and by the Steamship Company against the United States for injury to the Support. The libels were dismissed, and the libelants appealed.

Bigham, Englar & Jones, of New York City (Charles W. Hagen and Leonard Matteson, both of New York City, of counsel), for Flannery, Guinan & Moran, Inc.

Burlingham, Veeder, Masten & Feary, of New York City (Chauncey I. Clark and Eugene Underwood, Jr., both of New York City, of counsel), for New York & Cuba Mail S. S. Co.

Emory R. Buckner, U. S. Atty., of New York City (Horace M. Gray, Sp. Asst. U. S. Atty., of New York City), opposed.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] Viewed under the "pier end" statute, we cannot think this case one of legal difficulty. The construction of that act was settled in The Chauncey M. Depew, 139 F. 236, 71 C. C. A. 362, holding that, while the statute did not govern the right of recovery in admiralty, the regulation was within the power of the state, and the violation thereof was a fault; wherefore, if that fault contributed to the collision, liability arose.

Under that ruling the inquiry (once the fact of lying at the pier is established) is one of fact only, viz.: Was lying in the prohibited position a contributing cause of damage? If it was not a contributing cause, no liability arises; if it contributed, but the other vessel also contributed, it is a case of divided damages; and if lying at the pier end is mere condition, and not a cause, the offender against the statute may recover in full. We consider the doctrine perfectly

illustrated by a comparison of The Daniel McAllister, 258 F. 549, 169 C. C. A. 489, The New York Central No. 18, 257 F. 405, 168 C. C. A. 445, and The Lady of Gaspe (C. C. A.) 276 F. 900.

[2] Applying the foregoing to the facts above stated, a majority of the court is of opinion that the presence of No. 20 at the end of Pier 15 was not a contributing cause to the damages by her received. The act of the Suwied in landing without any warning to the No. 20, and under circumstances of danger contemporaneously appreciated by her own navigators, was the sole effective or contributing cause of disaster.

[3] We agree with the court below, however, that the same result cannot be reached in the case of the Support, because that barge is owned by the Steamship Company, agent of the owner of the Suwied. The agency agreement required the Steamship Company to supply the entire crew of the vessel and to manage the craft in every way.

It has not been claimed by the United States, and is vehemently denied by the Steamship Company, that this agency agreement makes it responsible for the careless navigation of navigators by it selected, and it is indeed a serious matter to hold responsible for the navigation of a vessel the agent who procured the navigators. We are not required, and therefore not permitted, to consider the larger possible aspect of the matter. We do not now hold that by virtue of the agency agreement Steamship Company became responsible for the navigation of the Suwied. But there can be no doubt that the chief stevedore on Pier 15 was a subagent, and therefore by the explicit terms of the contract his acts are to be considered the agent's acts.

In this case we have found the fact to be that this stevedore in charge of the pier exercised his authority—i. e., the Steamship Company's authority—to order the Suwied alongside the pier. In obeying the command of its owner's agent the vessel injured the agent's property. The agent—i. e., Steamship Company—in the person of its chief stevedore committed a tort. For the consequences of that tort it is on familiar principles liable to the owner of No. 20, but on equally familiar principles the tort-feasor cannot recover from his principal his own loss caused by a tort he himself committed.

The decrees appealed from are modified, so as to permit recovery by Flannery, etc., Inc., for the damage to No. 20, recovery to be against both the Steamship Company and

the United States, and execution to issue in the first instance against the Steamship Company only. In the matter of the Support, the decree below is affirmed. Costs of this court to Flannery, etc., Inc., only.