## CITY OF NEW YORK v. CLYDE LIGHTERAGE CO., Inc.

(Circuit Court of Appeals, Second Circuit. July 19, 1926.)

No. 367.

1. **Towage ⟨⟩14—Lighterage company held to have accepted responsibility for damage to or by scows in tow, imposed as condition to grant of additional pay sought.**

Lighterage company's continued furnishing of tug to city, and acceptance of additional pay *held* a sufficient acceptance of terms of city's letter, purporting to amend agreement by increasing pay and imposing responsibility for damage to or by scows in tow.

2. **Towage ⟨⟩14.**

Additional pay for Sunday work, granted by city to lighterage company, *held* sufficient consideration for company's acceptance of additional responsibility for damage to or by scows in tow.

3. Towage ⊗══14.

Lighterage company, having contract with city for daily tug service, *held* liable under contract for damage to or by scows and vessels in tow, regardless of its negligence.

4. Towage ⊗══15(3).

Delay in prosecuting libel for injuries to scow *held* to require disallowance of one-third of interest claimed as penalty.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the City of New York against the Clyde Lighterage Company, Inc. From a decree for libelant, respondent appeals. Decree modified, and, as modified, affirmed.

Appeal from a decree of the United States District Court for the Southern District of New York (Goddard, J., presiding), in favor of the libelant, upon a libel for injuries caused to one of the libelant's scows while in tow of the respondent's tug.

On September 18, 1918, the libelant agreed with the respondent to pay $125 a day "daily" for 12 hours' service of a tug to tow barges and scows in New York Harbor; time and a half for any time over 12 hours. The contract was to "continue from day to day until further notice, and may be terminated at any time by either party upon 24 hours' written notice." On November 8, 1918, the respondent, referring to an earlier oral agreement, asked the libelant for a modification of the contract, by which it should receive time and a half for every seventh day's work. On November 16, 1918, the libelant answered, saying that the contract was thereby amended by increasing the pay to time and a half on Sundays and adding that the "agreement is further amended by the addition of the following clauses." Among these was this: "You are to assume entire responsibility for the scows and vessels turned over to you by this department for towing, and agree to indemnify the city against all claims for damages from the owners of said scows, or from the owners of other vessels or property which may be damaged by collisions between said scows and vessels with other vessels, while the same are under your control and in your custody. This likewise applies to city-owned scows which are turned over to you for towing. * * * Please confirm our understanding of this matter."

The respondent received this letter, said nothing in reply, and continued to send the tug daily for orders to the city authorities. On December 7, 1918, a French cruiser in Hell Gate collided with one of the city's scows then in tow of the tug. The libelant made no proof that the tug was at fault, wholly or in part, and for that reason and for that alone the case is to be disposed of on the assumption that the fault, if any, was entirely that of the cruiser. The libel is based on the clause quoted.

Bigham, Englar & Jones, of New York City (Leonard J. Matteson, of New York City, of counsel), for appellant.

George P. Nicholson, of New York City (Charles J. Carroll, of Brooklyn, and John T. Condon, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] We have no doubt of the correctness of Judge Goddard's ruling that the respondent's silence, coupled with sending the tug for daily orders, was an acceptance of the terms of the libelant's letter of November 16th. That letter was certainly not an acceptance of the letter of November 8th; it would be wholly unwarranted to separate the later amendments which it contained from that which changed the rate on Sundays. The letter was indeed a rejection of the offer of November 8th and a counter proposal, including the clause now in question, as a promise to be made by the respondent in consideration for the libelant's promise to raise the Sunday rate. The respondent's acceptance of that counter proposal does not rest merely upon its silence, though under the circumstances that perhaps might alone have been enough. The respondent did more than that when, without protest, it continued daily to send the tug for orders. That could have had no other meaning than that the proposal was satisfactory, as unquestionably it was in respect of the increased pay. But plainly the respondent could not cut the promise in parts, accepting the increased pay and rejecting those promises which were its consideration. [2] We are not clear that the respondent, in addition, questions the sufficiency of the consideration for its promise. If so, the point is as ill taken as the first. The original agreement was for $125, "daily," which includes Sunday. The added price was a new detriment, which the libelant had not already assumed; it was therefore a valid consideration for the respondent's promise, quite independently of either party's faculty of withdrawal on 24 hours' notice.

[3] The more important question is of the extent of the obligation assumed. The respondent argues, and must argue, that it was subjected only to liability for negligence. If so,

the whole contract was meaningless, because the tug was liable for negligence in any case. The contract covered three kinds of loss to the city—liability to vessels not in tow of the tug; liability to the owners of scows in tow and chartered by the city; damage to scows in tow and owned by the city. In respect of the first kind of damage, the city's scows, whether owned or on charter, might be at fault in a collision, either wholly or in part. It was natural for the city to wish to avoid such questions, notoriously difficult of solution, and to ask the tug to pay all such losses as might be established against its vessels while in tow. Next, as to scows on charter, the libelant might be liable under the charters beyond its liability for negligent towage; if so, the contract would absolve it, and avoid any question of proving negligence in the tug. Finally, the city might suffer injury to its own barge from a collision. It was again natural to require the respondent to assume the burden of throwing the loss upon the other party to the collision, if there was one. Prima facie it stood charged. Unless the contract meant this, it meant nothing. While we do not rely on the precise words used, the phrase "assume entire responsibility" seems as apt as any to express the purpose of the parties.

[4] The liability appears to us plain, and the respondent may not avoid it because it was inconsiderately assumed. However, the delays in prosecuting the cause were extravagant. The libelant allowed the respondent nearly 14 months to answer, and took 7 months to put the cause on the calendar. Again, it took 10 months to agree to the damages. If proctors consent to conduct their causes in so laggardly a fashion, we have often said that we will penalize them. Only two-thirds of the interest included in the decree is allowed.

Decree modified, and, as modified, affirmed.

Judge ROGERS, through illness, was unable to take part in the decision of this case.