# THE JERSEY CENTRAL.

# THE TIMOTHY D. SULLIVAN.

Circuit Court of Appeals, Second Circuit.
January 7, 1929.

No. 106.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Frederic Conger, both of New York City, of counsel), for appellant.

William F. Purdy, of New York City, for libelant appellee.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for appellee Central Railroad of New Jersey.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The owner of the barge Australia filed his libel against the tug Jersey Central and the tug Timothy D. Sullivan to recover damages caused by the contact of a car float towed by the Jersey Central with the Australia, when the latter was moored at the end of Pier 39 in the North River.

The Australia lay on the south side of the Clyde Steamship Company Pier 38, North River, and was shifted by the tug Sullivan to a place across the end of Pier 39, upon the order of the harbor master of the Clyde Line, so that another barge could be discharged at the Australia's former berth. The Australia did not extend beyond the end of Pier 39 on the north side. After she had lain some five hours in this position, the tug Jersey Central brought a car float, which she had on her starboard side, up to Pier 39, rounded to, and landed the car float (which dropped down in the ebb tide) outside the Australia, cast off her own lines, and put out a line from the car float to the Australia. The tug then put a line on the end of the float and warped it into the slip on the north side of Pier 39, using the Australia as a fulcrum for this maneuver. The barge was damaged by the operation. The master of the tug did not ask the Australia to move, but proceeded to treat her as a pier end, in order to employ what he testified was a necessary method of getting her into the slip.

The District Court granted a decree for damages against both tugs, because the Sullivan was negligent in mooring the Australia at the end of Pier 39, in violation of the New York pier end statute, and the Jersey Central was negligent in using the barge as a pivot in mooring the car float.

The owner of the Sullivan appeals, on the ground that the proximate cause of the

damage to the Australia was not the shifting to the pier end by the Sullivan, but the negligence of the Jersey Central. While the claimant of the Jersey Central took no separate appeal, it contended on the argument that, as libelant's barge violated the pier end statute, the tug Jersey Central could in no event be liable for more than half damages. The presence of the Australia at the end of the pier, in violation of the New York statute, was a fault. Such was held to be the law in The Chauncey M. Depew (C. C. A.) 139 F. 236, and in New York & Cuba Mail S. S. Co. v. United States (C. C. A.) 12 F.(2d) 348. But, if the fault was not a contributing cause of the injury, neither the Australia, nor the tug Sullivan, that moored her at the pier end, can be held responsible for the damage done by the impact of the float of the Jersey Central.

The New York statute provides that "it shall not be lawful for any vessel, canal boat, barge, lighter or tug to obstruct the waters of the harbor by lying at the exterior end of wharves in the waters of the North or East River, except at their own risk of injury from vessels entering or leaving any adjacent dock or pier; any vessel, canal boat, barge, lighter or tug so lying shall not be entitled to claim or demand damages for any injury caused by any vessel entering or leaving any adjacent pier." Laws New York 1897, c. 378, § 879; Laws 1901, c. 466.

The effect of our decisions in The Chauncey M. Depew, supra, The New York Central No. 18, 257 F. 405, and New York & Cuba Mail S. S. Co. v. United States, 12 F. (2d) 348, has been to hold that the state statute could not alter the principles upon which courts of admiralty administer their jurisdiction; that, while it was a valid harbor regulation, it did not absolutely bar recovery in admiralty by the offending vessel, if recovery ought to be had under principles of maritime law; and that the violation of it was simply prima facie proof of negligence, which placed upon the violator the burden of showing that disregard of the statute did not contribute to the injury.

It was in accord with the foregoing principles that we held in The Daniel McAllister, 258 F. 549, that violation of the statute was not a contributing cause of the collision, where a vessel passing out of a slip collided with a barge at the end of an adjacent pier, though there was ample room for the vessel to make her exit without collision, if she had been properly navigated. In other words, we regarded the collision as due to gross neglect of ordinary care, rather than to an ob-

struction in violation of the statute which embarrassed navigation. The Daniel B. Flannery (C. C. A.) 282 F. 545.

But there have been other cases where there has been an obstruction to reasonable navigation by vessels lying at pier ends, and a known or evident risk if other craft should attempt to enter or leave adjacent piers. In such cases we have held that the vessels lying at the pier ends were entitled to notice of the approach of the craft entering or leaving the slip, and time within which to leave the pier end. If no such notice or opportunity was given, we have regarded the violation of the statute as not a contributing cause of a collision, and have treated the collision as due solely to the negligence of the other craft.

Thus, in New York & Cuba Mail S. S. Co. v. United States (C. C. A.) 12 F.(2d) 348, a steamer appreciated the danger of warping into her slip around barges moored at the end of a pier in the East River, but proceeded to carry out the maneuver without request to the barges to move. In these circumstances we held that damage to the barges was solely caused by the imprudent navigation of the steamer. Indeed, the appreciation of the danger and the attempt to enter the slip in the face of it approximated an intentional wrong done to the vessel at the pier end for the mere convenience of the steamer.

But in The Lady of Gaspe (C. C. A.) 276 F. 900, where the obstructing vessel was warned of the approach of a steamer about to enter an adjacent slip, and refused to move (though she could readily do so by hand) unless a tug was furnished to take her where she wished to go, we held that the steamer was justified in proceeding to enter the slip, though in so doing she lightly collided with a barge at the end of the adjacent pier. Judge Hough said in that case: "Inasmuch * * * as the lighter was able to comply with a reasonable warning by her habitual method of wharf-side navigation, it was a fault in her to refuse so to do. It was not a fault for the Gaspe to come in contact with this obstinate lighter." See, also, The New York Central No. 18 (C. C. A.) 257 F. at page 407.

It is true that in The Chauncey M. Depew (C. C. A.) 139 F. 236, where the Depew was attempting to warp a barge into a slip and negligently brought her in contact with a canal boat lying at the end of the pier, this court held both the tug and the canal boat at fault, and divided the damages, and Judge Lacombe said, at page 237: "We do not find the tug in fault for undertaking to make the turn on the corner of the canal boat instead of on the corner of the pier. Under the stat-

ute * * * the risk of injury from such a maneuver, carefully conducted, was one which the canal boat assumed when she improperly placed herself at the end of the dock in water which was prohibited to her as a berth. But the privileged vessel, although thus obstructed and embarrassed, was none the less under an obligation to exercise reasonable care when undertaking to use the corner of the canal boat as a fulcrum instead of the corner of the dock."

The Chauncey M. Depew, supra, was a pioneer decision in determining the scope of the pier and statute, but it was rendered before the question of a duty to warn vessels lying at the ends of piers, or to afford them an opportunity to remove to places of safety, began to be discussed. Since our decisions in The Lady of Gaspe, The New York Central No. 18, and New York & Cuba Mail S. S. Co. v. United States, already referred to, it has become an important consideration whether the privileged vessel has given the obstructing vessel warning and an opportunity to move in a case where passing in or out of the slip or pivoting on the obstructing barge involves manifest danger. In the case at bar no warning or opportunity to move was given, but the Jersey Central proceeded without delay to cast off her lines and warp in her car float. Libelant's barge could have slackened her lines in the ebb tide and dropped back, had a request been made or warning given. If this had been done, the danger of using the barge, instead of the pier end, as a fulcrum on which to warp the float, would have been obviated.

We hold that the fault of the Jersey Central in pivoting her float on the barge, without warning the latter, or giving her an opportunity to remove, was the sole cause of the injury. Had the warning and opportunity been given, the justification of the tug for attempting the maneuver would have depended on the degree of manifest danger. Any risk so serious as to imply intentional injury would have deprived the tug of the benefit of the statute. But if the risk had not been so great as to involve a deliberate disregard of the safety of the barge, and to imply an intention to injure her for convenience in landing the car float, the tug would have had the right to enter the slip, exercising such care as would have been possible in the circumstances, even though the entry might have involved some risk to the barge. The Lady of Gaspe (C. C. A.) 276 F. at page 902. To be sure the barge was not an outlaw, and other vessels were obliged to navigate in respect to her with due care. But, if she had persisted in continuing at the end of the pier in violation of the statute, after due warning and an opportunity to move, the Jersey Central would not have been obliged to cease her occupation as a tug engaged in landing her float, unless the danger of entry was so great as to involve deliberate disregard of the safety of the barge. But here the Jersey Central was under no necessity of taking a great risk, or any risk. She could have warned the barge and have secured her removal. Instead of adopting a known and common method of obviating all danger, she took the chance of pivoting her long float on the barge in an ebb tide, with resultant injury to the latter. Such conduct was without excuse and negligent, and was the sole cause of the injury.

The decree is modified, so as to dismiss the libel against the Sullivan, and to hold the Jersey Central solely liable.