## CITY OF NEW YORK v. PENNSYLVANIA R. CO.

### No. 10412.

District Court, E. D. New York.

Feb. 15, 1930.

Arthur J. W. Hilly, Corp. Counsel, of New York City (William J. Leonard, Asst. Corp. Counsel, of New York City, of counsel), for libelant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Paul Tison, of New York City, of counsel), for respondent.

GALSTON, District Judge.

This libel is brought for injuries sustained by D. S. C. Dumper B, as a result of having been struck by respondent's carfloat No. 24, in tow of respondent's tugboat No. 6 on the evening of December 26, 1923.

Witnesses for the libelant testified that the D. S. C. Dumper B was moored at the end of Pier No. 1, Walabout Basin, outside of the United States Trucking Company Hoister No. 1, which was removing garbage from the dumper at the time of the collision. Inside of the Dredge No. 1 was an Erie barge, and outside of the Dumper B was another boat known as the Spotlight. The Erie barge was 28 feet in width, the dredge 20 feet, Dumper B 40 feet, and the Spotlight 30 feet; from the end of the city pier to the west was free waterway of three hundred feet. Dumper B was lighted and was tied to the adjacent boats at the time the tug and carfloat coming from the south side of Pier 2 (the float being on the starboard side of the tug) struck and damaged Dumper B.

On the other hand, the respondent endeavored to prove that the Dumper B lying across the end of Pier No. 1 was being pulled by Hoister or Dredge No. 1, which was lying in the slip on the south side of Pier No. 1 outside of another scow. As the Pennsylvania tug advanced, the mate on the carfloat shouted, "Stop pulling" to the Hoister. The Hoister No. 1 continued to pull the scow until it came against the corner of the carfloat. There were no whistles blown. The only signals given were two bells on the tug to the captain to go back.

It is thus seen that the two versions of what occurred are directly in conflict. I am persuaded that the libelant gives the correct version, particularly because of the testimony of Olson, the engineer of the United States Trucking Corporation, who was on Dredge No. 1 at the time of the accident. He is, perhaps, the most impartial of the witnesses and testified with firmness and conviction as to the position of Dredge No. 1 and Dumper B at the time of the accident, and indeed saw the collision. Moreover, from the position of the boats described by the mate of the Pennsylvania tug, it is not easy to understand how the Dumper B could have been shifted in the manner which was attempted according to the mate's story. For he said that the Dumper B was being shifted from between two vessels at the end of Pier No. 1 into the slip between Piers No. 1 and No. 2 by means of a line from Hoister No. 1 to D. S. C. Dumper B, steam and a winch being utilized for the purpose by Hoister No. 1, all of this at the time that, according to this witness, lines were fast from the vessel outside of Dumper B either to Dumper B or to the vessel further in shore.

I think the respondent was negligent in the manner in which it came out of its slip and that that negligence caused the accident.

During the trial respondent was permitted to amend its answer so as to allege that it was a fault on the part of D. S. C. Dumper B, to be moored as she was at the end of Pier No. 1, Wallabout Basin, as that was a violation of the Act of Congress of March 3, 1899, c. 425, § 15, 30 Stat. 1152 (33 USCA § 409). Inasmuch as the total encroachment on the waterway by all of the boats tied up at the end of Pier No. 1 was but one hundred and thirty-six feet, and the width of the waterway from the pier and to the west was three hundred feet, there was ample clearance to enable the respondent to maneuver without striking any of the boats at the end of Pier No. 1.

In a similar situation Judge Hough wrote in New York & Cuba Mail S. S. Co. v. United States et al. (C. C. A.) 12 F.(2d) 348, 349:

"Was lying in the prohibited position a contributing cause of damage? If it was not a contributing cause, no liability arises; if it contributed, but the other vessel also contributed, it is a case of divided damages; and if lying at the pier end is mere condition, and not a cause, the offender against the statute may recover in full. We consider the doctrine perfectly illustrated by a comparison of The Daniel McAllister, 258 F. 549, 169 C. C. A. 489, The New York Central No. 18, 257 F. 405, 168 C. C. A. 445, and The Lady of Gaspe (C. C. A.) 276 F. 900."

It is true that Judge Hough was considering, not the federal statute, but the Pier End Statute of New York (Greater New York Charter [Laws 1901, c. 466] § 879). The principle of law, however, is the same in both cases.

In Dahlmer v. Bay State Dredging & Contracting Co. (C. C. A.) 26 F.(2d) 603, 604, it is stated that the federal act which provides, "it shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft," is declaratory of the General Maritime Law upon the subject, and then quotes with approval from The Caldy (C. C. A.) 153 F. 837:

"We do not think the Congress intended by Act March 3, 1899, c. 425, § 15, 30 Stat. 1152 (33 USCA § 409; U. S. Comp. Stat. 1901, p. 3543), to absolutely forbid anchoring in navigable waters, except only at such places as the location of the vessel would necessarily prevent the passage of other vessels, or obstruct them in passing to such an extent as to make the effort to do so a dangerous maneuver. If a vessel anchors at a point in a channel where, notwithstanding such anchorage, other vessels, navigated with the care the situation requires, can safely pass, then she has neither violated the statute, nor rendered herself liable under the general rules applicable to navigation, even though to a certain extent she has obstructed the channel."

See also Strathleven Steamship Co. v. Baulch (C. C. A.) 244 F. 412; The Mattie (D. C.) 5 F.(2d) 998; The City of Norfolk (C. C. A.) 266 F. 641.

Inasmuch, therefore, as the violation of the statute by the libelant did not contribute to the collision, I hold the respondent negligent.

Laches also is urged as a defense, since the accident occurred on December 26, 1923, and the libel was not filed until June, 1927. I think there is some force in this contention, and on the authority of Pennsylvania R. Co. v. Downer Towing Corp. (P. R. R. Barge No. 490) 11 F.(2d) 466 (C. C. A.); The Arpillao (C. C. A.) 270 F. 426, and The City of New York v. Clyde Lighterage Co. (C. C. A.) 13 F.(2d) 533, the libelant should be penalized. Two years' interest should be disallowed.

A decree may be entered accordingly.