## HORAN et al. v. THE GRACE II.

### THE AUBURN.

### THE HORAN NO. 27.

No. 18331.

United States District Court
E. D. New York.

April 14, 1952.

Mahar & Mason, New York City, for libelants.

Kirlin, Campbell & Keating, New York City, for claimant Grace Line, Inc.

Bleakley, Platt, Gilchrist & Walker, New York City, for respondent-impleaded T. Hogan & Sons, Inc.

BYERS, District Judge.

The scow Horan #27 while lying at the end of Pier 67 North River, heading down stream, was struck at her starboard bow corner by a carfloat in tow to port of the Lehigh Valley tug Auburn, making into the slip between Piers 66 and 67 for the float bridge occupying part of the inshore waters of the slip.

This was on November 21, 1946 at about 4 P. M. under weather conditions which played no part in the happening; there was a flood tide of about 1 knot strength the effect of which has not been the subject of testimony, since the libelant's cause against the Auburn has been settled by a payment which will benefit the tug Grace II and the impleaded respondent T. Hogan & Sons to be called Hogan, in the event of the visitation of liability upon either or both.

The facts are not controverted and the question for decision is whether the tug Grace II was at fault in landing the scow at the pier end, and leaving her there in a position of peril from being struck by such a tow as the Auburn and her float, in view of the presence within the slip of the float bridge, and its obvious purpose to receive railroad cars carried by carfloats.

Pier 67 is agreed to be 512 feet long and 85 feet wide and seemingly (Ex. 1) the same is true of Pier 66 immediately south; the slip is agreed to be 200 feet wide at the outer end but it is partially occupied by the said float bridge which seems to be about 75 feet wide at the bulkhead and to extend about 190 feet at full width and about 340 feet on its southerly side, and about 225 feet on its northerly side, out into the slip; the opening into which the floats proceed to land railroad cars is guarded by the lateral structures shown on that exhibit. Since the bridge is nearer to Pier 66 than 67, it is evident that when floats are being maneuvered in to land at the bridge, the shape of a tow consisting of a tug and car float on entering, will seldom if ever be parallel to the pier ends. The movement of tide and wind must be reckoned with if a tug is to do the job properly, and this is the requirement to be borne in mind rather than the presence of a sign reading: "Boats must not tie to end of this pier" which was plainly displayed on Pier 67 on the day in question, in considering whether the Grace II was guilty of fault in landing the Horan 27 as she did, and leaving her in the position stated.

It is not in dispute that the latter was 114 feet long 34 feet wide and drew about 8 feet, being lightly laden, when she was placed at the pier end. Since she was nearly 30 feet longer than the pier was wide, she was bound to overlap the pier on

both sides, unless her bow which was down stream, was flush with the southerly side of Pier 67, which no one asserts to have been the fact. The scowman said that the projection was 10 feet, and it is so found.

This landing was accomplished at about 11 A. M. when the scow was shifted from alongside Pier 65, and the damage was done some five hours later. Meanwhile an Erie covered barge shorter that the Horan 27 was landed outside the latter, but no protection seems to have been thereby afforded to her against the impact of the car float when it was being brought into the slip. It is a fair inference that entrance by the Auburn and her float was from the upriver side of the slip against the flood tide, i. e. it was in a slanting course.

Since such a maneuver was expectable, it must have been within the contemplation of whoever was responsible for landing the scow and leaving it at the pier end.

The claimant of the Grace II argues that in the absence of testimony on the part of the Auburn that the Horan #27 constituted an obstruction (and concededly there is none) the Court can infer nothing detrimental to the tug; that the libelant has alleged fault against both the Auburn and Grace II but has not proven the latter in view of the presumption against the former for striking a moored vessel which now has been conceded.

This seems to be an oblique way of arguing that the libelant cannot be heard to assert that the Grace II was jointly at fault with the Auburn, because the offense of the latter is no longer at issue. If the decisions are to that effect I have misunderstood them.

The briefs state that the dimensions of Lehigh Valley tug and float were: the carfloat (L. V. 2007) was 326' 10" long about 40 in width; that the tug was 97.4 x 30.5, giving a combined width to the tow of about 71 feet. If these data do not appear in the record, of which the Court has no copy, the cause may be reopened to establish them. This tow was entitled I think to make its way into the 200 foot slip free from the 10 foot encroachment caused by the presence of the scow and for which it was in no wise to blame. The tug Grace II cannot evade all responsibility in my opinion, unless it can demonstrate that the narrowing of the 200 foot entrance to the slip by the matter of 10 feet, in view of the angled approach which was somewhat governed by the necessity for close maneuvering from within the entrance to the slip so as to effect a landing at the float bridge, was a condition of rather than a contributing cause to the striking of the scow. There is no such testimony.

The most helpful case of all those cited in the briefs is The Jersey Central, 2 Cir. 30 F.2d 269, in that it discusses circumstances under which a tug which had functioned somewhat as the Grace II was relieved of joint liability in view of the conduct of the tug which maneuvered a car float into the slip alongside Pier 39. The damaged barge did not project into the slip on the north side of Pier 39. The fault of the barge's position was held not to be a contributing cause, but there is no suggestion in the opinion to the effect that the fact that fault was shown by the entering tug necessarily foreclosed the barge from asserting joint liability upon the berthing tug.

The present circumstances involve an involuntary shifting of the Horan #27, so far as it was concerned, into a position which involved exposure to damage which was indeed inflicted, and it seems to me that the shifting tug must be held in part responsible, in the absence of a showing in her case, that the berth selected by her Master which involved overlapping as stated, played no part in this happening.

The tug has sought to place responsibility upon Hogan, the stevedore in charge of Pier 65, by asserting through its captain, Simms, that Hyde, the Horan harbor master, ordered the shift from that pier. Hyde (who was riding the Grace II) denied giving this order and testified that there was no ship lying at Pier 65 on November 21, 1946, which precluded any occasion for such a change being ordered by Hogan. Davis, who was the Hogan Superintendent of Stevedores, testified and produced records to demonstrate that there was no ship being laden or discharged at Pier 65 on that

day nor was one expected, and hence that he gave no order for the shift of the Horan 27 on that day. It would be too much to expect anything approaching clear memory of such matters after the lapse of over five years, but the records are convincing and are sufficient to meet the impleading petition filed for the Grace II, and are more persuasive than the testimony of Simms, who contradicted Hyde as to the giving of the order to shift; this leaves the Grace II in the position of having failed in its burden of proof. That finding is hereby made.

The tug's fault is not as serious as was shown in The Marjorie R., D.C., 66 F.Supp. 65, and that case can scarcely be thought to rule this, particularly as here the fault of the tug Auburn is not in question.

The Grace II has not gone forward with proof which would exonerate her, and therefore she must be held jointly liable with the Auburn for the damage to libelant's scow. The impleading petition against T. Hogan & Sons, Inc. is dismissed for failure of proof, but without costs.

The libelant may take an interlocutory decree with costs, holding Grace II jointly to blame with the Auburn for the damage sustained by Horan 27, with appropriate provision crediting the sum paid in settlement by the Auburn.

Settle decree.